## BLUE BONNET LIFE INS. CO. v. CONNAWAY.

### No. 2472.

Court of Civil Appeals of Texas. Eastland.

Oct. 20, 1944.

Wm. H. McDonald, of Austin, for appellant.

Wilkinson, Johnson, Griffin & Bohannon, of Brownwood, for appellee.

FUNDERBURK, Justice.

An insurance policy designated "Duplicate" issued by Blue Bonnet Life Insurance Company on the 26th day of June, 1940, insuring the life of Mrs. Bama Connaway, naming her husband, Jesse Connaway, as beneficiary, obligated said Company (hereinafter called insurer,) upon stated conditions, to pay $1,000 in the event of the death of Mrs. Connaway (hereinafter called insured) while the policy was in effect.

An alternative obligation was to the effect that the insurer would pay $500 in the event of the insured's death during the second year from the date of the policy or last reinstatement thereof in case insured should die of, or her death be contributed to by (among other things), heart disease, kidney trouble or high blood pressure. The insured died May 7, 1943. Insurer defended on the ground that on December 5, 1941, the policy had lapsed because of failure to pay the monthly premium due on or before that date; that the policy was reinstated December 15, 1941; that in the application for reinstatement insured made untrue representations as warranties concerning her health, and that hence insurer was not liable. In the alternative, it was averred that insured's death was caused by heart disease or kidney trouble or high blood pressure, or that said diseases contributed to her death, and that, therefore, insured's liability, if any, was limited to $500.

In a jury trial a verdict was returned finding that the December, 1941, premium was paid on or before December 5, 1941; that insured did not die of heart disease, nor high blood pressure, nor kidney trouble, and that neither heart disease nor high blood pressure nor kidney trouble contributed to her death.

Upon this verdict the Court gave judgment for plaintiff, awarding recovery of $1,000, etc., from which defendant has appealed.

Insurer presents seven points upon which the appeal is predicated.

■ The first point is to the effect that the Court erred in overruling defendant's objection to testimony of plaintiff relative to a conversation plaintiff had with his wife. The objection was that the conversation was hearsay and was "a declaration [sic] of interest." If it be assumed that testimony stating the conversation would have been subject to the objection made, it is not shown that the ruling complained of was prejudicial to insurer. The conversation, if any, was not testified to by the witness. In effect, as we read the record, plaintiff obviated the objection by not inquiring of the witness and by the witness' not testifying what the conversation was. A mere statement of the plaintiff that he had a conversation with his wife, without stating the nature of it, would not, in our opinion, be prejudicial nor was it the subject of the objection, which anticipated testimony regarding the substance of the conversation.

■ The second point is to the effect that the Court erred in overruling insurer's objection to testimony of Dr. E. F. Cadenhead to the effect that Dr. Daugherty was extremely ill during the summer of 1943. A day or two before insured died on May 7, 1943, the two doctors—Cadenhead assisting Daugherty—performed an operation on insured. Dr. Daugherty signed a death certificate stating one of the causes of death to be myocarditis. Dr. Cadenhead, as a witness, disagreed that such was the cause of her death. Then followed: "Q. State whether or not Dr. Daugherty was extremely ill himself during the summer of 1943?" The objection to the testimony was that it was immaterial and prejudicial. If the objection was intended to raise a point that the operation was not performed in the summer of 1943, and that for that reason it was immaterial that Dr. Daugherty was extremely ill that summer, we think the objection was not sufficiently specific to apprise the Court of its true nature. It seems to us that if the testimony had any probative value whatever, it was admissible to aid the jury in finding the fact to which the conflicting opinions related. If it had no probative value, then, in our opinion, it was not calculated to prejudice the insurer and was, therefore, not presumed to have done so and was harmless.

■ The next point raises the question of whether the evidence established conclusively that the policy lapsed December 5, 1941, because of failure of insured to pay the premium then due. We think this point is sustained by the record. It will be unnecessary to state the grounds upon which

we reach this conclusion. It does not follow that insurer was entitled to have a general verdict instructed in its favor by the Court. There were other issues, the finding of which in plaintiff's favor would render the lapse of the policy immaterial, it having been reinstated on December 15, 1941.

Another point challenging generally the action of the Court in overruling objections to the special issues submitted does not, in our opinion, present any matter of reversible error. It may be granted that the Court should not have submitted special issue No. 1, but should have determined the question as one of law that the policy of insurance under the uncontroverted evidence lapsed December 5, 1941. The error would be harmless if the facts warranted recovery on the policy as reinstated on December 15, 1941.

█ The objections to special issues 2 and 3 seem to us to be hypercritical. In No. 2 the jury was asked whether insured "died from heart disease." The objection was to the effect that the inquiry should have been whether she "died from any form of heart disease." No. 3 asked whether "heart disease contributed to insured's death." The objection was that the inquiry should have been "whether or not any form of heart disease contributed to her death." The natural import of the language of both issues, we think, was inclusive of any form of heart disease.

██ By the fifth point it was contended that the Court erred in refusing to give two specially requested issues, one inquiring whether insured "died from any form of kidney infection"; and the other whether "any form of kidney affection contributed to the death of the insured." The issues which were submitted inquired whether insured "died from kidney trouble" and whether "kidney trouble contributed" to her death. The record shows no objections to the submission of said special issues, and therefore error, if any, in the statement of said issues was waived. The requested issues were but different forms of the issues submitted without objection. There was, therefore, no error in the refusal of the Court to give said requested issues. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920.

The sixth point, to the effect that the Court erred in overruling insured's motion for judgment, notwithstanding the verdict

of the jury, and the seventh and last point, that the Court erred in overruling the motion for new trial, present nothing of merit which is not concluded by our decision of the other points presented.

In our opinion the judgment should be affirmed, and it is accordingly so ordered.